```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ACCELECARE WOUND CENTERS, INC.,     :
                                    :
                    Plaintiff,      :
                                    :
          -v-                       :
                                    :    08 Civ. 8351 (DLC)
THE BANK OF NEW YORK, AMICUS HYPERBARIC :
GROUP, LLC, AMICUS MEDICAL GROUP, LLC, :  OPINION & ORDER
AMICUS WEST TEXAS HYPERBARIC L.P.,  :
AMICUS TEXAS HYPERBARIC, LP, AMICUS :
ARIZONA HYPERBARIS, L.P., AMICUS SOUTH :
TEXAS HYPERBARIC, LP, AMICUS VALLEY :
HYPERBARIC, LP, and JOHN R. HEDRICK, :
                    Defendants.     :
                                    :
------------------------------------X
                                    :
AMICUS HYPERBARIC GROUP, LLC,       :
                    Plaintiff,      :
                                    :    08 Civ. 11314 (DLC)
          -v-                       :
                                    :
ACCELECARE WOUND CENTERS, INC.,     :
                    Defendant.      :
------------------------------------X
```

Appearances:

For Plaintiff Accelecare Wound Centers, Inc. and Counter-Defendants Gwen Booth, Michael K. Lester, and Pamela Spaniac:

William S. Eggeling
Ropes & Gray, LLP
One International Place
Boston, MA 02110

Caitlin M. Moyna
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036

For Defendants Amicus Hyperbaric Group, LLC, Amicus Medical Group, LLC, Amicus West Texas Hyperbaric L.P., Amicus Texas Hyperbaric, LP, Amicus Arizona Hyperbaris, L.P., Amicus South

Texas Hyperbaric, LP, Amicus Valley Hyperbaric, LP, and John R. Hedrick:

Brian G. Jackson
9442 Capital of Texas Highway
Arboretum Plaza I, Suite 950
P.O. Box 1588
Austin, TX 78767

Thomas J. McGowan
Meltzer, Lippe, Goldstone & Breitstone, LLP
190 Willis Aveneu
Mineola, NY 11501


DENISE COTE, District Judge:

This Opinion addresses a motion to dismiss in this breach of contract action arising from a sale of health care businesses. Plaintiff Accelecare Wound Centers, Inc. ("Accelecare") is a Delaware corporation (with principal place of business in Washington) that specializes in managing hospital-based wound care centers, which often involve placing patients in hyperbaric chambers offering increased oxygen concentration to facilitate healing. Accelecare acquired the assets of defendants Amicus Hyperbaric Group, and six of its affiliates' (collectively, "the Amicus Parties" or "Amicus") assets used for the operation of wound care and hyperbaric medicine management service centers pursuant to an Asset Purchase Agreement dated May 31, 2007 (the "APA").

In the APA, Accelecare and the Amicus Parties, citizens of Texas and Arizona, agreed to place $2,841,400 of the purchase

2

price in an escrow account with the Bank of New York ("BONY"), a New York corporation, which was also named as a defendant when this lawsuit was originally filed.[1]  Accelecare, the Amicus Parties, and BONY signed an Escrow Agreement the same day.  The APA provided that certain conditions would entitle either Accelecare or the Amicus Parties to receive a portion of the funds from the escrow account, and this lawsuit concerns whether any of those conditions have in fact occurred.

Of central importance to this litigation is the "Earn-Out Provision," found in Section 14 of the APA.  The Earn-Out Provision provided that Accelecare would pay the Amicus Parties a bonus if certain medical centers met earnings targets.  The bonus would be calculated using a multiple of the EBITDA of certain medical treatment centers and it would be offset by certain adjustments, including a $1,750,000 cash advance on the bonus that Accelecare paid the Amicus Parties.  The APA allowed Accelecare to recoup from the escrow account any portion of the advance exceeding the actual bonus.  Accelecare could also offset any amount it owed to Amicus under the Earn-Out provision against any amounts that Amicus owed Accelecare under the APA (the "Offset Provision").  After the Amicus Parties delivered an audit opinion to Accelcare, $520,700 was disbursed to the Amicus

---

[1] In exchange for the Amicus Parties' assets, Accelecare agreed to pay $5,234,449 in cash, issue 248,528 shares of its stock, and assume some of the Amicus Parties' liabilities.

Parties from the escrow account, pursuant to the APA.  Beginning in May 2008, Accelecare began to request disbursements from the escrow account to pay tax obligations, as provided for in the escrow agreement, but received no disbursements from BONY.  On September 12, 2008, BONY gave Accelecare notice that it would not make any further disbursements from the escrow account to Accelecare.

Amicus Hyperbaric Group LLC filed an action against Accelecare in the Northern District of Texas on August 18, 2008, to establish its own rights to a percentage of the proceeds from the escrow account related to the performance of certain assets and in satisfaction of certain debts.  <u>Amicus Hyperbaric Group, LLC v. Accelecare Wound Centers, Inc.</u>, No. 08 Civ. 098-C (N.D. Tex. filed Aug. 19, 2008) (the "Texas Action" or the "Related Case").  Accelecare filed suit in this district on September 29, 2008, naming BONY and the Amicus Parties as defendants.  Accelecare's complaint alleges that BONY, acting on instructions from defendant John Hedrick on behalf of the Amicus Parties, refused to disburse funds from the escrow account as required by the APA.  It also alleges that the Amicus Parties breached their representations and warranties by misrepresenting their financial situation, causing plaintiff to incur losses as a

4

result and that the Amicus Parties tortiously interfered with the escrow agreement, causing BONY to breach that agreement.[2]

In an Order issued on December 22, 2008, the Honorable Sam Cummings transferred the Texas Action to the Southern District of New York, where it was assigned to this Court as related to the instant case and renumbered 08 Civ. 11314 (DLC).[3] On December 28, the Amicus defendants filed a counterclaim for breach of contract to the claim that Accelecare had filed on September 29. The counterclaim also sought relief on behalf of "Counter-Plaintiffs" Jim Bullard, Michael E. Austin, Carl Collazzo, and David R. Vela, and included Hyperbaric Partners LP ("Hyperbaric") as one of the defendants, even though Accelecare had not named Hyperbaric in the complaint.[4]  In addition to Accelecare, the counterclaim names as "Counter-Defendants" its employees Gwen Booth, Michael Lester, and Pamela Spaniac (the

---

[2] The parties have since voluntarily dismissed all claims against BONY and moved the funds in the escrow account into the Court Registry.

[3] The Escrow Agreement contains a forum selection clause designating New York.  Amicus Hyperbaric Group LLC, No. 08 Civ. 098-C (order transferring case to the Southern District of New York).

[4] The Amicus Parties and the Additional Counter-Plaintiffs will be collectively referred to as the Counter-Plaintiffs.  The counterclaim unfortunately fails to provide any explanation of the Additional Counter-Plaintiffs' relationship to the Amicus Parties, besides simply noting that some of them were present at various meetings or apparently performing certain managerial duties.  The APA indicated that Bullard was President of the Amicus Parties, at least at the time that the APA was signed.

5

"Counter-Defendants"), who were not parties to either original lawsuit.[5]

On January 7, Accelecare moved to dismiss the Texas Action, now pending before this Court. Its arguments are identical to those offered in support of its March 5 motion to dismiss the counterclaim. The breach of contract claims at issue in this motion assert that the Counter-Defendants failed to pay three debts that they had assumed under the APA for $270,000, $25,000 and $275,000. The Counter-Plaintiffs also allege that the Counter-Defendants breached the APA by failing to release $900,000 from escrow after the Medical Hospital Center Odessa (the "Odessa Center") met certain revenue targets.

Finally, the Counter-Plaintiffs assert that they would be entitled to greater payments had Counter-Defendants not mismanaged several of Accelecare's assets, causing other centers to fail to meet the revenue targets that would have triggered payments to the Counter-Plaintiffs, and they complain that

---

[5] Accelecare, Lester, Booth, and Spaniac will collectively be referred to as the "Counter-Defendants." The counterclaim does not precisely identify the roles that Lester, Booth, and Spaniac played at Accelecare. The Counter-Defendants' motions to dismiss reveal that Lester is Accelecare's CEO, Booth is the Senior Vice President of Operations of Accelecare, and Spaniac is currently President of Accelecare, although she was not affiliated with the company at the time that the APA was signed. The Amicus Parties do not dispute this information.

6

mismanagement also lowered the value of Accelecare stock.[6] Against Booth, Lester, and Spaniac -- still under the "breach of contract" heading -- the Counter-Plaintiffs specifically allege that these three individuals intentionally and negligently drove down Accelecare's stock price and deprived the Counter-Plaintiffs of revenue they would have earned from the centers' meeting certain revenue targets.  The Counter-Plaintiffs devote several paragraphs to descriptions of the "incompetence and mismanagement, both intentional and unintentional" that each of these three individuals manifested.

    Accelecare argues that none of the additional parties added in the counterclaim are proper parties, and that the remaining allegations asserted by the Amicus Parties fail to state a claim under Rule 12(b)(6), Fed. R. Civ. P.  Lester, Booth, and Spaniac each moved to dismiss as well, incorporating Accelecare's arguments and also seeking dismissal for insufficient service of process, pursuant to Rule 12(b)(5), Fed R. Civ. P.  Finally, Accelecare, Lester, Booth, and Spaniac have moved to strike the allegations in the counterclaim regarding the parties' conduct

---

[6] Unlike the complaint in the Texas Action, the counterclaim chronicles at length the allegedly deceptive negotiations and poor management practices by Accelecare that flouted regulations, squandered the company's value, and alienated its employees, all ostensibly in support of the breach of contract claim.

7

before and after the execution of the APA, pursuant to Rule 12(f), Fed. R. Civ. P.

## DISCUSSION

After addressing whether the counterclaim states a claim for breach of contract against any of the Counter-Defendants, the Opinion will proceed to address the propriety of the Additional Counter-Plaintiffs and Counter-Defendants' participation in the lawsuit as pled in the counterclaim.  A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104 (2d Cir. 2008) (citation omitted).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

Motions under Rule 12(b)(6) are evaluated according to a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (citation omitted).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient to raise a right to relief above the speculative level."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

1. Breach of Contract

The parties agree that Delaware law governs the claims in this lawsuit, pursuant to a choice of law provision in APA § 16.1.  The elements of a breach of contract claim under Delaware law are: "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."  H-M Wexford LLC v. Encorp, Inc. 832 A.2d 129, 140 (Del. Ch. 2003).

The Amicus Parties' breach of contract claims, described above, fall into three categories.  First, they claim that Accelecare has not paid three debts it assumed in the APA.  Second, they claim that Accelecare has not released from escrow $900,000 that the Amicus Parties are owed pursuant to the Earn-Out Provision because the Odessa Center met earnings targets.  The final set of breach of contract allegations concerns mismanagement of the assets that Amicus conveyed to Accelecare.

A. Payment of Debts

Of the three debts that the Amicus Parties allege Accelecare assumed under the APA, Accelecare contests whether

9

Amicus states a claim based on two of the debts, $270,000 owed to Gary Luker (the "Luker" claim) and $275,000 owed in connection with an asset in McAllen, Texas (the "McAllen" claim) because these obligations are duplicative.  Accelecare also argues that the Amicus Parties cannot show any damage -- and therefore, cannot state a claim for breach of contract -- because neither Luker nor Robert Morrow, to whom the third debt at issue is owed, has demanded payment.  The Amicus Parties' opposition does not contest that the McAllen and Luker claims are duplicative and abandons the McAllen claim.

The only issue, then, is whether the Amicus Parties needed to allege that Luker, Morrow, or creditors on their behalf have made a claim for payment in order to show that the failure to pay the debt has caused harm.  The allegation of harm, however, is clear from the face of the counterclaim: that Accelecare promised in the APA to pay a debt owed by the Amicus Parties and failed to pay it.  Indebtedness is an obvious harm: interest is accumulating and the obligation to pay remains outstanding.[7]  The motion to dismiss the counterclaim for breach of contract on failure to pay the McAllen claim is granted.  The motion addressed to the Luker and Morrow claims is denied.

---

[7] It is notable that Accelecare does not argue that it has a window of time to pay the debt remaining.  Amicus would certainly have no breach of contract claim for a promise to assume a debt not yet due.

B.  Failure to Release Earnings from Escrow

Accelecare argues that it was under no obligation to release funds pursuant to the Earn-Out Provision, specifically, the $900,000 to which Amicus claims it is entitled as a bonus on the performance of the Odessa Center, because the APA permits Accelecare to deduct any funds it was owed by the Amicus Parties from any funds it owed to them, and because Accelecare's rights to the escrow account are to be observed before Amicus receives disbursements.  As a consequence, Accelecare submits that payment of a $900,000 bonus authorized by the Earn-Out Provision for Odessa Center is not proper until Accelecare receives the funds from the Escrow Account that it is owed.

The Amicus Parties mistakenly base their entitlement on Section 3.2 of the APA, but this Section merely provides for the escrow account to be funded to support obligations that Accelecare may incur under the Earn-Out provision, Section 14 of the APA.  The only references to the Earn-Out provision in Section 3.2 describe the use of the escrow account for funding "obligations Seller may have to Buyer pursuant to Section 14(a)(i) related to the Medical Center Hospital at Odessa" or "amounts owed to Buyer pursuant to Section 14" (emphasis added).  "Seller" is Amicus; "Buyer" is Accelecare.  Absent from Section 3.2, therefore, is any mention of disbursing funds to "Seller" -- that is, to the Amicus Parties -- pursuant to the Earn-Out

11

provision.  The Amicus Parties have failed to state a claim for entitlement to the $900,000 based on this provision of the contract.

The Amicus Parties have, however, stated a claim for disbursement of $900,000 based on the Earn-Out Provision itself which, unlike Section 3.2, does provide for disbursements based on the EBITDA of the medical centers.  While the EBITDA alone does not guarantee a particular bonus (the bonus is calculated according to a formula that deducts various debts and the earn-out advance), such a bonus payment may be earned.

The Offset Provision, contained in Section 14.1(a)(iii), does not establish that, as a matter of law, the Amicus Parties are not entitled to any bonus.  It simply gives Accelecare the right to offset amounts owed to Amicus.  If there is a determination that no amounts are owed to Accelecare by the Amicus Parties, the opportunity to offset will be lost.  Accelecare's argument that it will be able to demonstrate a right to an offset raises an issue of fact, which is beyond to scope of this motion to dismiss.  Accelecare's separate point that all of the contract provisions must be given effect in making the determinations about payments that are due to Accelecare or the Amicus Parties is, of course, correct.  Those determinations must await, however, later stages of this litigation.  The Amicus Parties have therefore stated a claim

for breach of contract for failure to pay $900,000 based on the EBITDA of the Odessa Center.

C. Mismanagement

Amicus does not claim that Accelecare's mismanagement breached any specific provisions of the APA, aside from the failure to pay enumerated debts and to pay a $900,000 Earn-Out described above. Amicus has not pleaded claims for any other kind of breach. It has therefore failed to state a claim for breach of contract based on Accelecare's mismanagement.

To the extent that it seeks to introduce such evidence to show that there was some understanding regarding Accelecare's obligations beyond those contained in the APA, such evidence is barred because the Amicus Parties have not demonstrated that the APA is any way ambiguous. "If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." Eagle Industries, Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997). Neither has Amicus contested that the APA, which contains an integration clause, is an integrated agreement. "The parol evidence rule prevents the consideration of oral evidence that would contradict either total or partial integrated agreements." Jana Master Fund, Ltd. v. CNET Networks, Inc., 954 A.2d 335, 342 n.41 (Del. Ch. 2008)

13

(emphasis in original).  The allegations of mismanagement therefore do not create additional obligations not found in the APA.  Amicus seeks to link its mismanagement assertions to the APA's terms by asserting that it would have earned more bonuses but for the mismanagement.  Such as assertion, however, is not sufficiently rooted in the APA's terms to state a claim.

2. Claims Against Booth, Lester, and Spaniac

Accelecare, Booth, Lester, and Spaniac argue that the Additional Counter-Plaintiffs and the Counter-Defendants are not appropriate parties to the counterclaim, because, among other reasons, none were parties to the APA, which existed between the Amicus Parties and Accelecare.  They are correct.  Under Delaware law, "only a party to a contract may be sued for breach of that contract."  Wallace. v. Wood, 752 A.2d 1175, 1180 (Del. Ch. 1999).  Similarly, non-signatories to a contract may not bring suit to enforce the contract's terms.  Insituform of N. Am., Inc. v. Chandler, 534 A.2d 257, 270 (Del. Ch. 1987).  The counterclaim alleges breach of contract only.  It will therefore be dismissed in its entirety as brought by Additional Counter-Plaintiffs, including Hyperbaric Partners LP, and against Booth, Lester, and Spaniac.

14

3. Motion to Strike

Accelecare has also moved to strike several portions of counterclaim, mostly involving allegations of its mismanagement of the company, pursuant to Rule 12(f), which allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While the counterclaim contains stinging allegations of mismanagement, it is not so extreme or salacious that it warrants an exercise of the court's discretion under this rule. Neither is the content, which describes the negotiation and performance of the APA and the management of the combined entity post-acquisition, so wholly unrelated to the subject matter of the dispute that it should be stricken. "[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). Given that many of the allegations in the counterclaim are being dismissed on their merits, there is not a sufficiently "strong reason" to support granting a motion to strike as well. The motion to strike is denied.

4. The Pending Motion to Dismiss in the Related Case (08 Civ. 11314)

Accelecare makes the same arguments for the dismissal of the Related Case pursuant to Rule 12(b)(6), Fed. R. Civ. P., and

15

the same analysis applies.  For the reasons outlined above, the motion to dismiss the Related Case is granted except to the extent that it seeks dismissal of the claim to a $900,000 disbursement from escrow and the payment of two debts. Consolidation is appropriate when "actions involving a common question of law or fact are pending before the court."  Fed. R. Civ. P. 42(a)(2); <u>Devlin v. Transportation Communications Intern. Union</u>, 175 F.3d 121, 130 (2d Cir. 1999).  The remaining claims in the Related Case shall be consolidated with the remainder of the counterclaim.

## CONCLUSION

The March 5, 2009 to dismiss filed in <u>Accelecare Wound Centers, Inc. v. The Bank of New York</u>, Case No. 8 Civ. 8351, is granted in part.  The counterclaim is dismissed in its entirety against Booth, Lester, and Spaniac.  The counterclaim brought by Bullard, Austin, Collazzo, Vela, and Hyperbaric Partners is also dismissed in its entirety.  The Amicus Parties' counterclaim against Accelecare is also dismissed except for its allegations that Accelecare failed to disburse $900,000 based on the earnings of the Odessa Center and owes repayment of the Luker

and Morrow debts.  The January 7, 2009 motion to dismiss filed in 08 Civ. 11314 is resolved on the same bases.  A separate Order shall consolidate 08 Civ. 8351 and 08 Civ. 11314.

SO ORDERED:

Dated:     May 4, 2009
           New York, New York

                                    _____
                                            DENISE COTE
                                    United States District Judge