```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ACCELECARE WOUND CENTERS, INC.,         :
                                        :
                    Plaintiff,          :
                                        :
             -v-                        :     MASTER FILE:
                                        :     08 Civ. 8351 (DLC)
THE BANK OF NEW YORK, AMICUS HYPERBARIC :
GROUP, LLC, AMICUS MEDICAL GROUP, LLC,  :     OPINION & ORDER
AMICUS WEST TEXAS HYPERBARIC L.P.,      :
AMICUS TEXAS HYPERBARIC, LP, AMICUS     :
ARIZONA HYPERBARIC, L.P., AMICUS SOUTH  :
TEXAS HYPERBARIC, LP, AMICUS VALLEY     :
HYPERBARIC, LP, and JOHN R. HEDRICK,    :
                    Defendants.         :
----------------------------------------X
```

Appearances:

For plaintiff:

William S. Eggeling
Ropes & Gray, LLP
One International Place
Boston, MA 02110

Caitlin M. Moyna
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036

For defendants Amicus Hyperbaric Group, LLC, Amicus Medical Group, LLC, Amicus West Texas Hyperbaric L.P., Amicus Texas Hyperbaric, LP, Amicus Arizona Hyperbaris, L.P., Amicus South Texas Hyperbaric, LP, Amicus Valley Hyperbaric, LP, and John R. Hedrick:

Brian G. Jackson
9442 Capital of Texas Highway
Arboretum Plaza I, Suite 950
P.O. Box 1588
Austin, TX 78767

Thomas J. McGowan
Meltzer, Lippe, Goldstone & Breitstone, LLP
190 Willis Avenue
Mineola, NY 11501


DENISE COTE, District Judge:

    This Opinion concerns successive attempts by Defendants Amicus Hyperbaric Group, LLC, Amicus Medical Group, LLC, Amicus West Texas Hyperbaric L.P., Amicus Texas Hyperbaric, LP, Amicus Arizona Hyperbaric, L.P., Amicus South Texas Hyperbaric, LP, Amicus Valley Hyperbaric, LP, and John R. Hedrick (collectively, the "Amicus Parties,") to amend their counterclaim after parts of their original counterclaim were dismissed in <u>Accelecare Wound Centers, Inc. v. Bank of New York</u>, No. 08 Civ. 8531 (DLC), No. 08 Civ. 11314, 2009 WL 1227487, at *3 (S.D.N.Y. May 5, 2009) (the "May 5 Opinion"), and successive attacks by plaintiff Accelecare Wound Centers, Inc. ("Accelecare") on the timeliness and merit of those attempts.  It accepts the first amended counterclaim for filing but denies the application for leave to file a second amended counterclaim, and then turns to whether the amended counterclaim states a claim for relief.

BACKGROUND

    Plaintiff Accelecare specializes in managing hospital-based wound care centers, which often involve placing patients in hyperbaric chambers offering increased oxygen concentration to facilitate healing.  Accelecare acquired the assets of the

Amicus Parties used for the operation of wound care and hyperbaric medicine management service centers pursuant to an Asset Purchase Agreement dated May 31, 2007 (the "APA").

In the APA, Accelecare and the Amicus Parties agreed to place $2,841,400 of the purchase price in an escrow account with the Bank of New York ("BONY").  The APA provided that certain conditions would entitle either Accelecare or the Amicus Parties to receive a portion of the funds from the escrow account.

Of central importance to this litigation is the "Earn-Out Provision," found in Section 14 of the APA.  The Earn-Out Provision provided that Accelecare would pay the Amicus Parties a bonus if certain medical centers met earnings targets.  The bonus would be calculated using a multiple of the EBITDA of certain medical treatment centers and it would be offset by certain adjustments, including a $1,750,000 cash advance on the bonus that Accelecare paid the Amicus Parties.  Accelecare could also offset any amount it owed to Amicus under the Earn-Out Provision against any amounts that Amicus owed Accelecare under the APA.  On September 12, 2008, BONY gave Accelecare notice that it would not make any further disbursements from the escrow account to Accelecare.  Accelecare filed suit in this district on September 29, 2008, naming BONY and the Amicus Parties as defendants.  The litigation between Accelecare and the Amicus

Parties principally concerns their competing claims to the funds in the escrow account.

Meanwhile, Amicus Hyperbaric Group LLC had filed an action against Accelecare in the Northern District of Texas on August 18, 2008, to establish its own rights to a percentage of the proceeds from the escrow account related to the performance of certain assets and in satisfaction of certain debts.  <u>Amicus Hyperbaric Group, LLC v. Accelecare Wound Centers, Inc.</u>, No. 08 Civ. 098-C (N.D. Tex. filed Aug. 19, 2008) (the "Texas Action"). Amicus has alleged that Accelecare has tried to thwart its entitlement to an Earn-Out bonus by, <u>inter</u> <u>alia</u>, deliberately undermining the performance of the medical centers whose earnings would contribute to the bonus.  On December 22, 2008, the Honorable Sam Cummings of the Northern District of Texas issued an order transferring the Texas Action to this Court.

Accelecare's complaint alleges that BONY, acting on instructions from defendant John Hedrick on behalf of the Amicus Parties, refused to disburse funds from the escrow account as required by the APA.  It also alleges that the Amicus Parties breached their representations and warranties by misrepresenting

4

their financial situation and tortiously interfering with the escrow agreement, causing BONY to breach that agreement.[1]

The Amicus Parties filed a breach-of-contract counterclaim on December 28 in which they added certain Accelecare employees as "Counter-Defendants" and employees of the Amicus Parties as "Counter-Plaintiffs."  The counterclaim asserts that Accelecare breached the APA by failing to pay three debts that it had assumed under the APA and to release $900,000 from escrow after the Odessa Medical Hospital Center met certain revenue targets. The Amicus Parties further allege that they would have been entitled to greater payments from the escrow account had Accelecare not mismanaged several of Accelecare's assets by appointing inadequate managers, excluding legacy Amicus employees from management, and operating the centers poorly. The counterclaim complains that this mismanagement also lowered the value of Accelecare stock.

Accelecare moved to dismiss the counterclaim in its entirety on January 23, 2009 for failure to state a claim, and its employees named as Counter-Defendants each moved to dismiss on March 5, 2009.  The May 5 Opinion granted the Counter-Defendants' motions and dismissed them from the lawsuit. Accelecare's January 23 motion was granted in part, and the

---

[1] The parties have since voluntarily dismissed all claims against BONY and moved the funds in the escrow account into the Court Registry.

Amicus Parties' counterclaim was dismissed, except for its allegations that Accelecare failed to disburse $900,000 based on the earnings of the Odessa Medical Center pursuant to the Earn-Out Provision and owes repayment of the two debts it assumed under the APA.  May 5 Opinion, 2009 WL 1227487, at *6.  The Order also consolidated the Texas Action and the action first filed in this Court and applied the same analysis to the pending motion to dismiss filed by Accelecare in the Texas Action.[2]

Pursuant to Rule 16, Fed. R. Civ. P., a Pretrial Scheduling Order issued on May 4 (the "May 4 Scheduling Order").[3]  The Order set May 15, 2009 as the deadline for amendment of the pleadings or joinder of parties.  It also required that fact discovery conclude by November 13, 2009.

On May 15, Accelecare answered the counterclaim.  Hours later, the Amicus Parties filed a First Amended Counterclaim ("FAC").  On June 6, Accelecare moved to dismiss the FAC because Accelecare had not sought leave to amend and because the proposed FAC was futile.  The motion was fully briefed on June 26.

---

[2] The Amicus Parties moved for reconsideration of a portion of the May 5 Opinion on May 8.  A Memorandum Opinion and Order shall issue today denying the motion.

[3] A Rule 16 Initial Pretrial Conference was held with the parties on December 12, 2008.

On July 10, nearly two months after the May 15 deadline, the Amicus Parties moved for leave to file their Second Amended Counterclaim ("SAC"). Accelecare again argued that the proposed amendment was untimely and futile. The motion for leave to amend was fully briefed on July 31.

## DISCUSSION

Because the SAC, if accepted for filing, would supplant the FAC and potentially displace some of Accelecare's arguments in its motion to dismiss the FAC, the motion for leave to file the SAC will be addressed first. The Opinion will then address the motion to dismiss the FAC.

1. The Amicus Parties' Motion for Leave to File the SAC

The motion for leave to file the SAC was filed well after the May 15 deadline for amendment of the pleadings established by the May 4 Scheduling Order. Rule 16(b), Fed. R. Civ. P., rather than Rule 15(a), consequently governs the Amicus' Parties application for leave to amend to file the SAC. Rule 16 provides that a district court may enter a scheduling order that limits the time to amend the pleadings, and subsection (b) states that that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). Rule 16 "is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some

7

point both the parties and the pleadings will be fixed."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (citation omitted).  Disregarding the instructions of a scheduling order "would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.  Rule 16 was drafted to prevent this situation."  Id. (citation omitted).

"[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."  Id.  In determining whether a party has shown good cause, "the primary consideration" is whether the movant has been diligent.  Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).  Another relevant factor is prejudice to the defendants.  Id.

The Amicus Parties fail to meet the Rule 16(b) standard. Amicus attempts to justify having filed the SAC after the May 15 deadline by arguing that it did not receive the 2008 Earn-Out notice, a statement of Amicus' entitlement to any bonus under the APA's Earn-Out Provision, from Accelecare until May 22, 2009.  The Earn-Out notice, the Amicus Parties argue, formed the basis for a new claim in the SAC for "Tortious Breach of the Duty of Good Faith and Fair Dealing."

8

Even assuming that the Amicus Parties did not have information vital to the SAC until May 22, they offer no excuse to explain why they waited six more weeks, until July 10, to seek leave to amend. This unexplained delay demonstrates a lack of diligence and, accordingly, a lack of good cause justifying granting leave to amend. The motion for leave to file the SAC is denied. See id.

2. The FAC

Accelecare's first argument against the FAC is that it was improperly filed because Accelecare had already answered the original counterclaim, so the Amicus Parties were consequently obliged by the Federal Rules of Civil Procedure to seek leave of the court before filing an amended counterclaim. Rule 15(a), Fed. R. Civ. P. permits a party to amend "only by leave of court or by written consent of the adverse party." Because Accelecare had answered the counterclaim, the Amicus Parties were required to seek leave to amend to file the FAC before filing the document.

The Amicus Parties respond that they filed the FAC only hours after Accelecare answered the counterclaim and that Accelecare suffered no prejudice. They also argue that their amendment was timely because it was made in advance of the May

9

15 deadline set by the May 4 Scheduling Order.  Neither of these arguments excuses the Amicus Parties' failure to follow Rule 15.

Rule 15 does not include a grace period permitting a party to file an amended pleading after a responsive pleading without seeking leave of court.  As for the lack of prejudice to Accelecare, it would be properly considered in the context of a request for leave to amend, which the Amicus Parties have not made.  See Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987) ("a motion to amend should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party") (emphasis supplied).  A lack of prejudice favors granting a request for leave to amend, but does not excuse a party from having to seek leave in the first place.

Moreover, a scheduling order that sets a cut-off date for the amendment of pleadings does not supplant Rule 15.  As described above, a scheduling order requires a movant to show good cause in support of any motion to amend that follows the deadline -- in this case, May 15.  The FAC is thus not properly before the Court.  A brief consideration of the merits of the FAC, moreover, demonstrates that the additional allegations it contains are futile, and that a motion for leave to amend would have been rejected in any event.

10

A. Futility Standard

A proposed amendment would be futile if it could not withstand a motion for judgment on the pleadings. Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003). The same standard applies to a motion to dismiss and a motion for judgment on the pleadings. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

A court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). To survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 555 U.S. 544, 570 (2007)); see also South Cherry Street, LLC v. Hennessee Group LLC, --- F.3d ---, No. 07-3658-cv, 2009 WL 2032133, at *5 (2d Cir. July 14, 2009) (courts are to "assum[e] all 'well-pleaded factual allegations' to be true, and 'determin[e] whether they plausibly give rise to an entitlement to relief'" (citing Iqbal, 129 S.Ct. at 1950)). This "plausibility standard

is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. 1949 (citation omitted).  Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, --, No. 07-2283-cv, 2009 WL 1956176, at *4 (2d Cir. July 9, 2009).

B. Breach of Contract

The Amicus Parties' claim for breach of contract does not meaningfully differ from the breach of contract claim in the original counterclaim.  For the reasons in the May 5 Opinion and the Memorandum Opinion and Order addressing defendants' motion for reconsideration, the allegations concerning a debt owed in connection with the McAllen Medical Center is dismissed as duplicative of the debt owed to Gary Luker.

C. Action for Accounting

The FAC includes an "Action for Accounting" that alleges Accelecare breached certain obligations in the APA and an Investor's Rights Agreement ("IRA") to provide the Amicus Parties with certain financial reports and audits.  The FAC does not identify who signed the IRA, which investments it covers, or when it became effective.  The copy of the IRA attached to

12

Accelecare's moving papers reveals that, while Amicus employees Hedrick and Bullard are parties to the IRA, Amicus itself is not and is thus not entitled to an accounting premised on a breach of that agreement.  Non-signatories to a contract may not generally bring suit to enforce the contract's terms. Insituform of N. Am., Inc. v. Chandler, 534 A.2d 257, 270 (Del. Ch. 1987).[4]

Moreover, as Accelecare points out, Section 23 of the IRA contains a forum selection clause requiring that any disputes seeking to enforce the agreement be brought in Massachusetts. Forum selection clauses in contracts are enforceable under Delaware law unless enforcement would be "unreasonable and unjust under the circumstances," or if the forum selection clause was procured "by fraudulent inducement."  Prestancia Management Group, Inc. v. Virginia Heritage Foundation, II LLC, Civ. No. A. 1032-S (JWN), 2005 WL 1364616, at *7, *7 n.56 (Del. Ch. May 27, 2005).[5]  The Amicus Parties argue that it is

---

[4] The parties agree that Delaware law governs the claims in this lawsuit, pursuant to a choice of law provision in APA § 16.1. "Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs."  VKK Corp. v. National Football League, 209 F.3d 163, 175 (2d Cir. 2001).  Under New York law, a choice of law provision in a contract is valid and enforceable aside from certain exceptional situations not relevant here.  Schiavone Const. Co. v. City of New York, 99 F.3d 546, 548 (2d Cir. 1996).

[5] The Second Circuit has found "no provision under the Delaware Rules of Court restricting the citation of unpublished opinions

inconvenient that they must bring challenges under the APA in New York and the IRA in Massachusetts, but that was the parties' bargain, and the Amicus Parties have not made a showing that the forum selection clause is unjust or unreasonable. The claims related to the IRA are thus dismissed. See id. at *6 n.54 (dismissal is appropriate where forum selection clause directs that litigation be brought elsewhere).

The remaining portion of the "action for accounting" is simply another breach of contract claim that happens to involve accounting-related obligations under the APA, such as the APA's requirement that Accelecare provide audited financial statements to the Amicus Parties within a certain amount of time after their completion. "An action for an accounting is not available when there exists an adequate remedy at law." Schuss v. Penfield Partners, L.P., No. 3132-VCP (DFP), 2008 WL 2433842, at * 11 (Del. Ch. June 13, 2008). As defendants have a breach of contract remedy available, and do not argue otherwise, their action for accounting is dismissed.[6]

---

for precedential value in opinions. On the contrary, rules expressly permit the citation of unpublished opinions in briefs submitted to various Delaware state courts for this purpose." Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 115 n.14 (2d Cir. 2003). See also Reynolds v. Ellingsworth, 843 F.2d 712, 725 (3d Cir. 1988) (noting that unpublished opinions have precedential value under Delaware law).

[6] Moreover, the damage alleged in the Action for Accounting is that the Amicus Parties did not receive the Earn-Out bonus that

D. Securities Fraud and Breach of Fiduciary Duty

The FAC next brings a claim alleging breaches of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a) ("PSLRA") and of Accelecare's fiduciary duties to its shareholders.  The Amicus Parties first claim that Accelecare violated the PSLRA by, <u>inter alia</u>, fraudulently inducing the Amicus shareholders to enter into the APA by misrepresenting the fact that it would not issue more common stock in the future.  They overlook the fact that the PSLRA does not provide a cause of action to a shareholder alleging violations of the securities laws; rather, it regulates shareholders' attempts to bring such actions.  <u>See</u> <u>Ring v. AXA Financial, Inc.</u>, 483 F.3d 95, 97-98 (2d Cir. 2007) (the PSLRA "limits recoverable damages and attorneys' fees, provides protections to corporations, mandates sanctions for frivolous lawsuits, and specifies heightened pleading requirements for actions brought pursuant to Section 10(b) and Rule 10b-5").  The PSLRA claim is dismissed.

The breach of fiduciary duty claim alleges that Accelecare breached its fiduciary duty to stockholders by allegedly failing

---

they were owed.  Section 14(c) of the APA includes a procedure by which the Amicus Parties could object to the calculation of their bonus, providing that disputes "will be submitted to a mutually agreed to accounting firm and such firm shall make a determination with respect to any disputed amounts in accordance with this Agreement."  The Amicus Parties have made no showing that they followed this procedure before interposing their Action for Accounting.

to conduct due diligence before an acquisition and by making false promises that legacy Amicus employees would retain management positions.  A corporation, however, owes no fiduciary duties to its shareholders.  See Alessi v. Beracha, 849 A.2d 939, 950 (Del. Ch. 2004).  Perhaps realizing their error, the Amicus Parties make an improper attempt in their opposition papers to convert this claim into a claim that Accelecare has breached the implied contractual duty of good faith and fair dealing between the parties.  See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint through statements made in motion papers").

While appearing under the heading of a breach of fiduciary duty owed to shareholders, however, the Amicus Parties' argument about a breach of the duty of good faith and fair dealing does fairly address paragraph 156 of the FAC, which includes an allegation that Hedrick and Bullard were damaged by Accelecare's breach of the duty of good faith and fair dealing as well as by its breach of fiduciary duties.  This allegation is nonetheless rejected as futile.  A breach of the duty of good faith and fair dealing may only arise from a contractual obligation.  See Blue Chip Capital Fund II Ltd. Partnership v. Tubergen, 906 A.2d 827, 833 (Del. Ch. 2006) ("the implied covenant of good faith and fair dealing defines the duties of parties to a contract") (emphasis added).  As explained in the May 5 Opinion, 2009 WL

1227487 at *5, Bullard and Hedrick were not parties to the APA and may not bring a claim for the breach of a contractual obligation based on that agreement.  Insituform of N. Am., Inc., 534 A.2d at 270.

E.  Enforceability of Non-Competition Agreement

The final claim in the FAC seeks a declaratory judgment that a non-competition agreement included in the APA against Bullard and Hedrick is unenforceable.  Accelecare has questioned the existence of subject-matter jurisdiction over this claim on ripeness grounds because Bullard and Hedrick have never indicated that they plan to compete with Accelecare.

"Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "The standard for ripeness in a declaratory judgment action is that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005) (citation omitted).

This claim is not yet ripe. Bullard and Hedrick have announced no plans to even attempt to compete with Accelecare, nor does their pleading indicate that Accelecare plans to enforce the covenant against them. The FAC is devoid of any suggestion of the immediacy required for a claim for declaratory relief to be ripe. See, e.g., Camerlo v. Howard Johnson Co., 710 F.2d 987, 990 (3d Cir. 1983) ("[t]he record does not reveal that plaintiff even contemplates activity arguably in violation of the covenants. She has not alleged an intention to . . . engage in competitive activity, or that such actions by her would meet with opposition by defendant.")

The Amicus Parties respond that a declaratory judgment is "prophylactic." This statement ignores that in declaratory judgment actions ripeness remains a "constitutional prerequisite to exercise of jurisdiction by federal courts." Federal Election Comm'n v. Central Long Island Tax Reform Committee, 616

F.2d 45, 51 (2d Cir. 1980). The Amicus Parties cite to no law to support their position that they need not demonstrate immediacy. Nor do they attempt to establish that an immediate and concrete controversy exists.[7] The FAC's claim for a declaration voiding the non-competition agreement is dismissed on ripeness grounds.

## CONCLUSION

The Amicus Parties' July 10, 2009 motion for leave to file the SAC is denied. Accelecare's June 4, 2009 motion to dismiss the FAC is granted. The litigation shall continue according to the schedule set forth in the May 4 Scheduling Order.

SO ORDERED:

Dated:   New York, New York
         August 11, 2009

                                        _____
                                              DENISE COTE
                                        United States District Judge

---

[7] The Amicus Parties had notice from Accelecare's June 4 memorandum of law that this claim faced a challenge on subject-matter jurisdiction grounds. They could have responded in their opposition brief by putting in evidence that a ripe controversy existed, as a court may go beyond the pleadings to evaluate whether it has subject-matter jurisdiction. St. Paul Fire and Marine Insurance Company v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005). That they did not do so further indicates their inability to establish the justiciability of this claim.

19